* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford, and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On June 26, 2002, Plaintiff sustained a compensable injury by accident to his right arm.
2. On the date of Plaintiff's compensable work accident, June 26, 2002, the parties hereto were subject to and bound by the provisions of the North Carolina Worker's Compensation Act.
3. On such date, the employee-employer relationship existed between the Employee-Plaintiff and the Employer-Defendant.
4. On such date, the Employer-Defendant employed three (3) or more employees.
5. On the date of Plaintiff's compensable work accident, the worker's compensation insurance carrier in North Carolina for the Employer-Defendant was Liberty Mutual Group.
6. Plaintiff's average weekly wage is $779.38.
7. Defendants accepted Plaintiff's claim pursuant to a Form 60 dated March 26, 2003. Defendants paid Plaintiff temporary total disability benefits from February 27, 2003 until August 3, 2003 when he returned to work for Employer-Defendant.
 * * * * * * * * * * *
As set forth in the Pre-Trial Agreement and this Opinion and Award, the Commission addresses the following
 ISSUES
1. Whether Plaintiff has been provided suitable employment consistent with his restrictions or whether the work he is doing is "make work"; *Page 3 
2. Whether the Commission should award Plaintiff compensation for a permanent impairment rating previously assigned;
3. Whether Plaintiff is entitled to continued medical and lifetime medical treatment;
4. Whether Defendants are entitled to a credit in the amount of $537.50 for payment of the Plaintiff's share of the cost for the mediated settlement conference held on February 26, 2007 pursuant to Rule 7(c) of the I.C. Rules for Mediated Settlement Conference; and
5. Whether Plaintiff took an unreasonable position in refusing to sign the Form 21 for his PPD rating, and the "defense" of the Defendants hearing request such that Defendants should be awarded attorneys fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * * RULING ON MOTION TO ADMIT ADDITIONAL EVIDENCE
Plaintiff has moved to submit an April 29, 2008 medical note by Dr. Jeffrey Daily, referencing the plaintiff's current medical condition and employment capacity. The Full Commission finds that this note addresses issues outside the scope of the hearing before the Deputy Commissioner, chiefly the issue of whether Plaintiff is now permanently and totally disabled, and, thus, is not properly before the Full Commission at this time. Therefore, the Full Commission, in its discretion, hereby DENIES Plaintiff's motion to admit additional evidence in the form of an April 29, 2008 medical note by Dr. Jeffrey Daily. This Opinion and Award shall be limited to the issues and evidence of record that was properly before the Deputy Commissioner at the time of the hearing and at the close of the record by the Deputy Commissioner.
 * * * * * * * * * * * *Page 4 
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, Plaintiff was sixty-two years old, having a birthday of February 5, 1945. Plaintiff had completed the twelfth grade and had participated in some technical training at the local community college. Plaintiff began working for Defendant-Employer in 1966.
2. Plaintiff was known to be a good and efficient worker. Prior to his compensable injury, he had no problems getting his work done. He is not a complainer, and continues to work, even when he experiences mild discomfort or pain.
3. In 1980, Plaintiff began working in the tool room. He was promoted in 1985 to the tool and die machinist position. Plaintiff remained employed in this position as of the date of the hearing before the Deputy Commissioner. Plaintiff's job responsibilities also included setting the preset tools for the Employer's machines and numerical control. Plaintiff has received steady increases in pay up to his last hourly pay rate of $19.75.
4. On June 26, 2002, Plaintiff sustained a work-related injury in the course and scope of his employment with the Defendant-Employer. On such date, Plaintiff tripped and fell over some pallets into a storage room ladder and injured his right shoulder.
5. Plaintiff's claim was accepted as compensable and Plaintiff received temporary total disability benefits in the amount of $519.61 from February 27, 2003 until August 3, 2003 when he returned to work for the Employer.
6. On January 9, 2003, Plaintiff began treating with Dr. Jeffrey Daily of OrthoCarolina (previously Miller Orthopedic Clinic). Plaintiff presented to Dr. Daily upon *Page 5 
referral of Dr. Fredric Burney for evaluation of right shoulder and right arm pain. Plaintiff reported that he had been experiencing the pain for about a month and that he had a long history of shoulder bursitis. Plaintiff also reported a history of being involved in a motor vehicle accident in 1985 with some changes noted on a right shoulder x-ray at that time. A shoulder x-ray performed on this treatment date revealed a previous AC joint separation with significant calcification in the coracoclavicular ligament with a type II acromion. Plaintiff had a positive impingement sign on examination with some subacromial popping. Dr. Daily recommended rotator cuff strengthening and a change in medication.
7. Plaintiff participated in strengthening exercises, but continued to experience significant problems with his shoulder. When Plaintiff returned to Dr. Daily on February 11, 2003, reporting continued right shoulder pain, Dr. Daily ordered an MRI of the shoulder. On a return visit on February 21, 2003, Dr. Daily indicated that the MRI revealed a large rotator cuff tear with significant retraction.
8. Dr. Daily recommended a more aggressive approach for Plaintiff's shoulder through surgical intervention. On February 27, 2003, at Union Regional Medical Center, Plaintiff underwent surgery to his shoulder, to repair a massive right rotator cuff tear.
9. Plaintiff went out of work for his surgery and recovery time and was paid compensation benefits for total disability at the rate of $519.61 per week.
10. Plaintiff healed well post-operatively. However, at his July 23, 2003 visit, Plaintiff complained to Dr. Daily of a lack of significant progress, poor motion and some subacromial popping. At this point, Dr. Daily recommended that Plaintiff resume work with no lifting greater than twenty pounds, no pushing or pulling greater than twenty pounds and no *Page 6 
overhead work. Plaintiff returned to work for the Employer with these restrictions around August 1, 2003, as noted by the Form 28 Return toWork Report dated August 8, 2003.
11. On December 1, 2003, Plaintiff reported to Dr. Daily that for the last month he had been functioning pretty well at his job. As Dr. Daily did not recommend any further medical treatment at that time, Dr. Daily released Plaintiff at maximum medical improvement, and assigned a twenty-five percent (25%) permanent partial impairment of Plaintiff's right arm.
12. On this date, Dr. Daily also assigned permanent work restrictions of no overhead work. Dr. Daily did discuss with Plaintiff other restrictions, but he did not assign these ratings in writing because if he had, per his testimony, Plaintiff would not have been able to work. Dr. Daily also indicated, and the Commission finds, that he could not delineate every possible activity that would cause Plaintiff problems and pain because then Plaintiff would not be able to do anything functional.
13. As both Dr. Daily and Plaintiff himself have acknowledged, Plaintiff wanted to go back to work and the Employer worked well with Plaintiff to accommodate his restrictions. In Dr. Daily's opinion and it is found that returning to work was good for Plaintiff psychologically because it allowed him to go back to work and function reasonably well, if not normally. Still, as Dr. Daily has testified, Plaintiff is working under significant restrictions. Plaintiff would not be able to do his former job in the manner he previously did and now needs assistance to perform certain lifting activities.
14. Plaintiff returned to see Dr. Daily on April 15, 2004. Dr. Daily reported, and the Commission finds, that Plaintiff had a poorly functioning rotator cuff and that he would have significant long-term restrictions on overhead work and lifting with the right arm. *Page 7 
15. When Plaintiff returned to see Dr. Daily on February 3, 2005, although Plaintiff had some improvement, he continued to have symptoms in his shoulder. Plaintiff continued to work under significant restrictions, which Dr. Daily noted was to be expected, considering the significant pathology found in the prior surgery. Plaintiff was essentially the same as he was on the prior visit, and Dr. Daily continued Plaintiff on his work restrictions, noting, "Significant activity is going to cause him difficulty." Dr. Daily planned to see Plaintiff only as needed (p.r.n.) as Dr. Daily did not expect any changes to Plaintiff's rating or his work restrictions.
16. In regard to Plaintiff's current job duties and responsibilities, Plaintiff is still employed in the same job position with the Employer as he was at the time of his June 26, 2002 accident. However, as Plaintiff and co-workers testified, Plaintiff has assistance as needed, with heavy lifting or overhead lifting. Plaintiff testified that he sometimes asks for help from other employees to assist him in lifting objects overhead and lifting objects in general. The most weight Plaintiff can comfortably lift with his right arm is 20-25 pounds. Plaintiff testified that he frequently must stop working to wait for someone to come help him lift the parts.
17. Plaintiff testified, and it is found, that his work load as a tool and dye operator for the Employer has increased since the end of February 2007 when a former co-worker in Plaintiff's department, Jerry Swink, retired.
18. Mitchell Dunton, a co-worker of Plaintiff's for thirty-three years, testified that Plaintiff had difficulty performing his job and coping with the physical demands of it. He testified that the majority of Plaintiff's problems in performing his work were shoulder related.
19. On August 8, 2007, Plaintiff's authorized treating physician, Dr. Jeffrey M. Daily, orthopedic surgeon, was deposed. In regard to his assignment of MMI to Plaintiff and to other patients that he has treated, Dr. Daily explained his definition of "maximum medical *Page 8 
improvement" (MMI). He stated that MMI means that he has determined that a patient is not going to improve to a significant extent and that there is nothing else that he can offer the patient that would improve his or her medical status at that point in time. Dr. Daily stated that, once a patient reaches MMI, it means that the patient is "not going to benefit from anymore . . . medical attention, medical treatment, any further intervention."
20. As shown by his testimony and medical records, Dr. Daily assessed Plaintiff on December 1, 2003 at MMI. Dr. Daily assigned a twenty-five percent permanent partial rating to Plaintiff's right arm and completed a Form 25R Evaluation for Permanent Impairment which cited said rating. He also stated that he assigned permanent work restrictions of no overhead work to Plaintiff on December 1, 2003. Although as he testified, Dr. Daily discussed other restrictions with Plaintiff, he did not formally assign the same to Plaintiff in writing so that Plaintiff would be able to return to work. Dr. Daily stated that he orally assigned permanent restrictions of no lifting greater than 10 to 15 pounds on a regular basis and no lifting above chest level or overhead.
21. Dr. Daily still believes and the Commission finds that Plaintiff reached maximum medical improvement as of December 1, 2003. Dr. Daily stated that one of the signs that indicated Plaintiff had reached MMI was the fact that Plaintiff's right shoulder motion and function had "plateaued" and that "he was as good as he was going to get." In regard to Plaintiff's permanent partial rating, Dr. Daily evaluated Plaintiff again on April 15, 2004 and on that date confirmed the twenty-five percent rating that he had previously assigned to Plaintiff's right arm. Dr. Daily recently evaluated Plaintiff on June 11, 2007 at the request of Plaintiff's counsel. Per his testimony, he still believes that Plaintiff's rating is appropriate for Plaintiff's right arm and that rating has not changed. Dr. Daily further testified that he is satisfied that *Page 9 
Plaintiff's twenty-five percent rating is appropriate under both the Industrial Commission's guidelines and the guidelines of the American Medical Association.
22. Dr. Daily ultimately testified that Plaintiff's lack of function and pain issues required significant accommodations to be made by Defendant-Employer. Dr. Daily was of the opinion that, although Plaintiff had done a good job and made a significant effort in attempting to work for the Defendant-Employer, Plaintiff is now at a point where he just cannot do the job.
23. Even though Plaintiff is at maximum medical improvement, per Dr. Daily's testimony, further treatment may be needed in the future. It is reasonable for Plaintiff to have periodic follow-up assessment of his right shoulder, yearly or as may be needed.
24. Based on the totality of the evidence of record, including the testimony of Plaintiff, his co-workers, and Dr. Daily, the Full Commission finds that Plaintiff's job has been modified substantially to accommodate his restrictions and, thus, would not be considered a real job in the competitive labor market.
25. The Full Commission, in its discretion, finds that Plaintiff has not unreasonably defended this matter.
26. The Full Commission, in its discretion, finds that Defendants have not engaged in unfounded litigiousness in bringing this matter to hearing.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to his right arm on June 26, 2002. N.C. Gen. Stat. § 97-2(6). *Page 10 
2. Plaintiff is entitled to his most munificent remedy under the Workers' Compensation Act. Vernon v. Mabe, 336 N.C. 425, 431,444 S.E.2d 191,194 (1994). In order for the Commission to determine Plaintiff's most munificent remedy, the Commission must first determine Plaintiff's wage-earning capacity. Saums v. Raleigh Comm. Hosp., 346 N.C. 760,487 S.E.2d 746 (1997).
3. If employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market, then it is not indicative of a claimant's wage-earning capacity. Peoples v.Cone Mills Corp., 316 N.C. 426, 438, 342 S.E.2d 798, 806 (1986). Based on the totality of the evidence of record, the Full Commission concludes that Plaintiff's current job is so modified because of his physical limitations related to his compensable injury that it is not indicative of his wage earning capacity. Id. Therefore, the Full Commission concludes there to be insufficient evidence upon which to determine Plaintiff's wage-earning capacity. Id.
4. Plaintiff continues to attempt to work for Defendant-Employer to the extent that he is able. However, should plaintiff ultimately determine that he can no longer perform his job for Defendant-Employer, it will not constitute a refusal to accept suitable employment because the job is overly-modified. Id.
5. While Plaintiff may be entitled to compensation under Sections 97-29 and 97-31 of the North Carolina General Statutes, the Full Commission concludes that he is not required to make an election of remedies at this point in time. See Vernon v. Mabe, 336 N.C. 425, 431,444 S.E.2d 191, 194 (1994). Plaintiff has the exclusive right to determine the timing of his making the election of his most munificent remedy. See Id.; and Knight v. Wal-Mart Stores, 149 N.C. App 1, 7,502 S.E.2d 434, 439-40 (2002). *Page 11 
6. Although Plaintiff is at MMI, it is reasonably necessary for him to have future medical monitoring of his condition and therefore, Plaintiff is entitled to ongoing medical treatment for his right shoulder, and Dr. Jeffrey Daily is hereby designated as Plaintiff's treating physician. N.C. Gen. Stat. §§ 97-2(19), 97-25.
7. Defendants should be awarded a credit in the amount of $537.50 for payment of Plaintiff's share of the mediation costs and such credit should be withheld from Plaintiff's award of permanent partial disability. Rules for Mediated Settlement and Neutral EvaluationConferences of the N.C.I.C., Rule 8(c).
8. Plaintiff did not take an unreasonable position in this matter such as to justify an award of attorneys' fees to Defendants pursuant to N.C. Gen. Stat. § 97-88.1.
9. Defendants have not engaged in unfounded litigiousness in bringing this matter to hearing such as to justify an award of attorneys' fees to Plaintiff pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay for medical assessment and treatment that may be reasonably necessary for Plaintiff's right shoulder for the rest of his lifetime, with Dr. Jeffrey Daily designated as Plaintiff's treating physician.
2. Defendant's request to compel Plaintiff to accept compensation for his disability rating under Section 97-31 of the North Carolina General Statutes must be, and is hereby, DENIED. *Page 12 
3. Plaintiff SHALL be permitted to elect his most munificent remedy under the Workers' Compensation Act when he sees fit.
4. Defendants are awarded a credit in the amount of $537.50 for payment of Plaintiff's share of the costs for the mediated settlement conference held on February 26, 2007, and such credit should be withheld from Plaintiff's award of permanent partial disability benefits.
5. Defendants shall pay the cost, including an expert witness fee of $1,020 to Dr. Jeffrey Daily, if not paid by prior order.
This 6th day of August 2008.
S/__________________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/__________________________________ DANNY LEE McDONALD COMMISSIONER
DISSENTING:
 S/__________________________________ BUCK LATTIMORE COMMISSIONER *Page 13